Eugene **BARNES**, Appellant,

v.

Sam Elmer **DORSEY** et al., Appellees.

No. 73–1115.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1973.

Decided June 15, 1973.

---

Eugene Barnes, pro se.

A. Robert Belscher, St. Louis, Mo., for appellee, Percich.

Robert C. McNicholas, City Counselor, and John J. Fitzgibbon, Associate City

Counselor, St. Louis, Mo., for appellees, Hall and others.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

PER CURIAM.

The plaintiff in this civil rights action under 42 U.S.C. §§ 1983 and 1985 is a Missouri prisoner whose appeal from a state conviction of burglary is pending, as of the latest notice to us, in the Missouri Supreme Court. In the meantime however, the plaintiff has filed a *pro se* complaint *in forma pauperis* in the United States District Court, Eastern District of Missouri,[1] alleging deprivations of his civil rights.

Judge Wangelin, dismissed the complaint against all defendants, except Dr. Vargas, for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Against Dr. Vargas, the complaint was dismissed for lack of personal jurisdiction, since service of process was not accomplished. Judge Wangelin denied the plaintiff's request and defendants' (Moss and Scott) motions for appointment of counsel since the dismissals as to all defendants rendered the question of appointment of counsel moot. The District Court also denied the plaintiff's request for a reversal of a Missouri Supreme Court order denying the plaintiff a transcript of his state conviction, since federal courts do not have "subject matter jurisdiction to review on direct appeal such action by the Missouri Supreme Court." We affirm the District Court.

The plaintiff was convicted of a burglary of the Living Room Lounge, St. Louis, Missouri, which occurred approximately at 4:00 a. m. on July 21, 1970. Sam Elmer Dorsey, owner of the tavern, told police that he was concealed in a closet inside the tavern when the plaintiff broke in the front door. Before the breakin, Dorsey had driven by his tavern at approximately 3:00 a. m. and had seen an officer investigating his tavern since the security alarm was sounding. Upon discovering a rear door window was broken, Dorsey told the officer that he planned to spend the rest of the night at the tavern. After the officer left, Dorsey noticed the plaintiff walking on the opposite side of the street and glancing frequently at the tavern. At that point, Dorsey hid in the closet and waited approximately one hour before the plaintiff broke in the front door. Dorsey told the police that he fired two shots at the plaintiff inside the tavern, that one shot struck the plaintiff in the thigh, and that the plaintiff got up off the tavern floor and walked outside where he fell to the ground. Dorsey called the police, and when they arrived, Barnes was arrested outside the tavern and taken to City Hospital No. 2. Barnes' state conviction for burglary followed, and his appeal to the Missouri Supreme Court is now pending.

The defendants in this civil suit are: Honorable Michael Scott, Circuit Judge of Missouri in the Circuit Court, City of St. Louis, who presided at Barnes' burglary trial; Nels C. Moss, Assistant Circuit Attorney for the City of St. Louis, who was the prosecuting attorney at Barnes' trial; James P. Lavin, Clerk of the Court of Criminal Corrections, City of St. Louis; A. L. Lark, Warden of the City Jail; Sheriff Percich, Sheriff of the City of St. Louis; J. Martin Hadican, the plaintiff's court appointed attorney in the state conviction; Dorsey, the tavern owner and a witness in the state conviction; Dr. Vargas, who was employed at City Hospital No. 2 during the time of the alleged violations of the plaintiff's civil rights; and Police Officers Harry Hall, Fred Smith, Sergeant Major Blancett, and Michael Dunn. For various reasons, the plaintiff claims that these individuals either individually or in concert deprived him of his federally protected rights in relation to his arrest, his recovery at the city hospitals, and his trial.

1. The Honorable H. Kenneth Wangelin presided. The opinion is published at 354 F.Supp. 179 (E.D.Mo.1973).

 Although the defendants filed various motions in the District Court to dismiss this action, Judge Wangelin treated all motions, except as to Dr. Vargas, as a failure to state a claim upon which relief may be granted. We agree that this procedure was proper. Meredith v. Allen Co. War Memorial Hospital Commission, 397 F.2d 33, 35 (6th Cir. 1968). Further, the District Court accepted all material allegations in the complaint as true and liberally construed them in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Also, the general rule on dismissal of complaints apply to this complaint, and it will not be dismissed unless it appears that the plaintiff could "prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted); Jenkins v. McKeithen, *supra*, 395 U.S. at 422, 89 S.Ct. 1843.

Plaintiff's major contention concerning his alleged deprivation of his civil rights and defective arrest and trial is that medical evidence clearly could establish that it was impossible for the plaintiff who was suffering a gunshot wound to have moved from inside the tavern to outside and that Dorsey's testimony was therefore improper and insufficient evidence on which to base an arrest and a conviction for burglary. Inferentially, the plaintiff wants us to conclude despite his conviction by a jury that he was outside the tavern when he was shot and therefore that no burglary occurred. In relation to his argument of deprivation of civil rights, the plaintiff alleges that defendants Judge Scott, Moss, Lavin, Hadican, Dorsey, Hall, Smith, Dunn, and Blancett either singularly or in concert allowed Dorsey's testimony in a police report to go uncontradicted for the basis of an issuance of an arrest warrant but allowed the suppression of the police report at trial which would have provided, due to its improbability, a ground for arguing the plaintiff's innocence.

 We agree with Judge Wangelin that the plaintiff has alleged no cause of action against Judge Scott, since he was acting within the scope of his judicial authority. Pierson v. Ray, 386 U.S. 547, 554–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Mullins v. Oakley, 437 F.2d 1217, 1218 (4th Cir. 1971); Wilhelm v. Turner, 431 F.2d 177, 180–181 (8th Cir. 1970), cert. denied, 401 U. S. 947, 91 S.Ct. 919, 28 L.Ed.2d 230 (1971). In regards to Moss, the plaintiff has alleged facts that purportedly demonstrate that Moss was not properly acting within his capacity as a prosecutor. Since we think that the facts alleged fall within acts that may be categorized as prosecutorial, rather than investigatory, functions, dismissal as to Moss was proper. When a prosecutor is acting within the scope of his proper prosecutorial capacity, these actions are cloaked with the same immunity granted to judges. Wilhelm v. Turner, *supra* 431 F.2d at 182–183. We specifically reserve the question of the liability of a prosecutor acting within an investigatory capacity.

 In regards to the possible liability of Lavin, the court clerk, the plaintiff has failed to allege that the clerk was not properly performing his ministerial duties. Although Lavin has not pleaded a "good faith" defense that, if proven, would exonerate him from liability under McCray v. Maryland, 456 F.2d 1, 3–5 (4th Cir. 1972), such a plea is unnecessary due to the plaintiff's failure to allege any facts that would support relief against Lavin. Conley v. Gibson, *supra*. The clerk's actions were purely ministerial and there is no allegation of facts showing improper acts or how the plaintiff was injured by any illegal acts of the clerk. We affirm the District Court's dismissal as to Lavin.

 In regards to the possible liability of Hadican, the plaintiff's court

appointed attorney for the burglary charge, we hold, as did the District Court, that Hadican "acted only in his performance of his duties as Court appointed counsel in representing plaintiff" and "[s]uch actions are not performed under the color of state law." Dyer v. Rosenberg, 434 F.2d 648, 649 (9th Cir. 1970); Sinclair v. Spatocco, 452 F.2d 1213 (9th Cir. 1972), cert. denied, 409 U.S. 886, 93 S.Ct. 102, 34 L. Ed.2d 142 (1972). Further we agree with the District Court that the plaintiff need not prove action under color of state law under § 1985, but must allege facts showing that the defendant conspired with the intended purpose of denying the plaintiff the equal protection of the law. The plaintiff has alleged no facts to show any concerted action by Hadican with any defendant to deprive the plaintiff of the equal protection of the law, and therefore dismissal is proper for failure to state a claim. Conley v. Gibson, *supra*; see Dieu v. Norton, 411 F.2d 761 (7th Cir. 1969).

■ In relation to defendant Dorsey, the tavern owner, the plaintiff claims that Dorsey fabricated the account of the shooting incident to the police and to the state court. No allegation has been made that Dorsey acted in concert with any public official, therefore Dorsey cannot be said to have acted under color of state law in violation of § 1983, nor to have acted as part of a conspiracy in violation of the Civil Rights Act. Dieu v. Norton, *supra* at 763.

■ The District Court also properly dismissed the complaint for failure to state a claim against the four police officers. The plaintiff claims that his arrest was unlawful and his conviction improper since the police officers must have known that the plaintiff could not have moved outside the tavern. The police officers counter by claiming that Dorsey's account of the shooting and breakin gave them probable cause to arrest the plaintiff. Since the facts alleged by the plaintiff show that the officers acted upon probable cause, dismissal was proper. Pierson v. Ray, 386 U.S. at 557, 87 S.Ct. 1213, 18 L.Ed.2d 288.

■ The plaintiff also alleges that defendant Lark, Warden of the City Jail, contributed to aggravating the plaintiff's injuries by taking the plaintiff's walking cane and by requiring the plaintiff to re-use a disposable plastic syringe for the use of insulin. The plaintiff later became ill and was removed to a city hospital for oral insulin treatment. The District Court dismissed the plaintiff's complaint by relying on Fear v. Pennsylvania, 413 F.2d 88 (3d Cir.), cert. denied, 396 U.S. 935, 90 S.Ct. 278, 24 L.Ed.2d 234 (1969) and United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3d Cir.), cert. denied, 396 U.S. 1046, 90 S. Ct. 696, 24 L.Ed.2d 691 (1969). Those cases broadly held that a prisoner's complaint against a warden for alleged improper medical care is "legally insufficient to establish a denial of rights secured under the federal constitution or laws." Fear v. Pennsylvania, *supra* 413 F.2d at 89 (citations omitted). The Eighth Circuit has not adopted the positive position of *Fear* and *Gittlemacker* that unqualifiedly denies a prisoner the right to prove allegations of improper medical care against a warden. In Cates v. Ciccone, 422 F.2d 926, 928 (8th Cir. 1970), we held that the District Court should provide a forum to hear factual allegations against a warden for medical treatment of "obvious neglect or intentional mistreatment." The plaintiff's allegations, however, do not indicate that there has been "obvious neglect or intentional mistreatment." The Warden says that taking away the walking cane was necessary since it could have been used as a weapon. We think that such an action was prudent in this case. Also, the plaintiff by his own admissions says that he received medical care concerning his insulin treatment after he became ill. These allegations simply

do not on their face constitute obvious neglect or intentional mistreatment.

■ Plaintiff also contends that Sheriff Percich of the City of St. Louis forced the plaintiff to leave City Hospital No. 2 to appear for a preliminary hearing in the burglary charge before the plaintiff's broken leg had healed. Sheriff Percich moved for a summary judgment since he took office on March 17, 1972, long after the alleged acts occurred. The plaintiff asked the District Court to join Sheriff Tozer, who preceded Sheriff Percich in office. The District Court denied the motion to add a party defendant. Obviously Sheriff Percich incurred no responsibility or liability to the plaintiff, and the District Court did not abuse its discretion in refusing to add Sheriff Tozer as a party defendant.

Plaintiff further argues that Dr. Vargas of City Hospital No. 2 contributed to the plaintiff's leg injury due to improper medical care. Since Dr. Vargas was not properly served, the District Court dismissed the complaint for want of personal jurisdiction. The dismissal was obviously correct.

■ The plaintiff has asked us to compel the Missouri Supreme Court to supply the plaintiff with a transcript of his state conviction of burglary. Due to the death of the court reporter, the transcript's preparation was delayed. Apparently according to a letter sent by the Clerk of the Missouri Supreme Court to the District Court, the transcript was, as of November 14, 1972, in the process of being prepared. As the District Court held, we have no power to compel the Missouri Supreme Court to supply the plaintiff with a transcript of his state conviction of burglary in this civil rights action. The request for appointment of counsel, as indicated by the District Court is now moot, in view of the dismissal as to all defendants.

The District Court is affirmed.